## RICHES, PIVER & CO. v. NITRATE AGENCIES CO.

Circuit Court of Appeals, Third Circuit.
March 23, 1928.

Rehearing Denied May 25, 1928.

No. 3566.

Patents ⊕⟹328—1,237,815, for process of manufacturing calcium arsenate as an insecticide, held invalid and not infringed.

Riches and Piver patent, No. 1,237,815, relating to a process for the manufacture of calcium arsenate for use as an insecticide, *held*, invalid, for lack of invention, and not infringed.

Appeal from the District Court of the United States for the District of New Jersey; William Clark, Judge.

Patent infringement suit by Riches, Piver & Co. against the Nitrate Agencies Company. Decree for defendant, and plaintiff appeals. Affirmed.

George H. Mitchell and Lewis J. Doolittle, both of New York City, for appellant.

Stephen H. Philbin and Fish, Richardson & Neave, all of New York City, for appellee.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

DAVIS, Circuit Judge. This is an appeal from a decree of the District Court holding invalid United States letters patent No. 1,237,815, issued to George R. Riches and William C. Piver, on August 21, 1917. The patent relates to a process for the manufacture of calcium arsenate, a widely used insecticide, free from "soluble arsenic" or

"acid salt." The defenses were invalidity and noninfringement. The District Judge found the patent invalid, but did not pass upon the question of infringement.

The problem in its manufacture is, in the first place, to produce a substance which will kill insects without damaging plants and plant life on which it is used, and, in the second place, to produce it economically and in such condition that it will adhere to plants on which it is used. It is made by causing lime and arsenic acid to react, so as to form a salt, or calcium arsenate, but in order to be sure of obtaining it an excess of lime is employed in the defendant's process. In manufacture there are formed four calcium arsenates—mono-calcium arsenate, di-calcium arsenate, tri-calcium arsenate, and the basic arsenate. The third salt, tri-calcium arsenate, but usually called calcium arsenate, is the salt of the patent. The first and second salts are soluble in water and readily decompose, forming arsenic acid, which injures plants and foliage.

The patent deals with the problem of avoiding the formation of these undesirable and injurious arsenic salts or water solubles by the use of electrolytes added to the solution at the time of reaction, which, the patentee says, will prevent the occlusion of these soluble arsenic compounds. The defendant, on the other hand, does not control or prevent these water solubles by the addition of electrolytes, as the patent teaches, but prevents them by means of temperature and agitation, which plaintiff recognizes, but says are unimportant and make slight difference. In this respect, the defendant's practices differ from the teaching of the patent.

Again, the plaintiff, not only did not teach the necessity of the use of excess lime in the manufacture of calcium arsenate, but actually taught the contrary. The disclosure of the patent is that the addition of electrolytes of sodium hydroxide and calcium nitrate to solutions at the time of reaction prevents the occlusion of soluble compounds of calcium and arsenic. The claim is not only for the electrolytes of sodium and calcium nitrate, but for all hydroxide electrolytes. Whatever the invention of the patent may be, it is certain that not all electrolytes or compounds added in accordance with the teaching of the patent prevent occlusion of undesirable water solubles. Claims 1 and 2 are, therefore, broader than the patent.

Many catalytic agents had been used in the prior art in the manufacture of lead arsenate and calcium arsenate, before the disclosures of the patent in question. Nitric acid and acetic acid had been used. Lead arsenate and calcium arsenate were manufactured by both the plaintiff and defendant. The patent No. 892,603, to Luther and Volck, relates to the manufacture of arsenate of lead, a similar insecticide, by the use of an electrolyte. This is made by the reaction of arsenic acid and calcium oxide. "The reaction is effected after a catalyzing agent has been added."

It was old in the insecticide art, prior to Riches and Piver, to employ an independent electrolyte for the purpose of bringing about a complete combination between arsenic acid and a basic oxide. The record shows that the manufacture of calcium arsenate by the reaction of lime and arsenic acid in the presence of sodium hydroxide was well known, and so the patent discloses an expedient well known in the art.

In claim 1, a compound is used to prevent occlusion; in claim 2, an independent electrolyte is used; and in claim 3 sodium hydroxide is used. The defendant did not use any of these to prevent occlusion. The defendant used soda ash to control the density or bulkiness of the finished product, and it had no other function. On the other hand, plaintiff never used soda ash in its commercial process. It does not reduce water solubles, but tends to increase them.

We are of opinion that defendant did not infringe, and that plaintiff's patent is invalid. Therefore the decree is affirmed.